**THOMASON v. MILLER et al. (No. 7185.)**

Court of Civil Appeals of Texas. Austin. March 1, 1928.

Rehearing Denied March 21, 1928.

1. **Appeal and error** ⬦916(1)—**Allegations of sustained plea in abatement are assumed as true on appeal in absence of statement of facts.**

Where there is no statement of facts upon hearing of plea in abatement, court on appeal from dismissal after sustaining plea must assume as true, allegations of plea.

2. **Bankruptcy** ⬦299—**All solvent stockholders within reach of court's processes held necessary parties to suit to enforce stockholders' liability for deficiency between par value and amount paid.**

In suit by trustee in bankruptcy of insolvent corporation to enforce stockholders' liability as upon subscription to capital stock for deficiency between par value of stock and amount paid therefor, *held*, that all stockholders who are solvent and within reach of court's processes are necessary parties.

---

**3. Bankruptcy ⟨⟩145(2)—Cause of action for alleged fraudulent overvaluation of property paid for by stock, held not to pass to trustee in bankruptcy of corporation.**

Cause of action for alleged fraud in overvaluation of oil leases turned over to corporation in consideration of its capital stock, is personal to particular creditors of corporation defrauded and is not an asset of corporation passing to its trustee in bankruptcy, and latter cannot maintain an action for such fraud.

**4. Corporations ⟨⟩99(1)—"Watered stock" is that issued without consideration or for less than par value, or for labor, services, or property worth less than par value.**

Watered stock is stock issued as bonus or otherwise without consideration or issued for a less sum of money than par value, or issued for labor, services, or property which at a fair valuation is less than the par value.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Watered Stock.]

**5. Bankruptcy ⟨⟩145(4)—Action for fraud perpetrated against corporation passes to its trustee in bankruptcy.**

An action for fraud perpetrated upon a corporation itself passes to its trustee in bankruptcy as an asset of its estate.

Appeal from District Court, Brown County; J. O. Woodward, Judge.

Action by A. N. Thomason, Trustee in bankruptcy of Patterson Oil Company, against E. J. Miller and another. From a judgment of dismissal, plaintiff appeals. Affirmed.

Critz & Woodward, of Coleman, and McCartney, Foster & McGee, of Brownwood, for appellant.

Harrison & Woodruff and Jenkins, Miller & Wilson, all of Brownwood, for appellees.

McCLENDON, C. J. Suit by A. N. Thomason, as trustee in bankruptcy of Patterson Oil Company, against E. J. Miller and T. F. Patterson as organizers and subscribers to the capital stock of the oil company, to recover balance of proved claims against the corporation after all its assets had been applied thereto, on the ground that property consisting of oil leases turned over to the corporation in consideration of its capital stock had been grossly and fraudulently overvalued. Defendants filed a plea in abatement, listing a large number of other parties who were interested in the oil leases and had received stock in consideration for their interest, and asserting that they were necessary parties to a proper determination of the ratable amount each should pay to make up the deficiency in the corporate assets, in case there was any liability on the part of the stockholders to do so. This plea was sustained. Plaintiff declined to make additional parties, and the suit was dismissed.

Briefly stated, plaintiff's petition alleges the following: The oil company was incorporated under the laws of Texas on May 9, 1918, with a capital stock of $100,000. The charter was obtained upon affidavit of Miller, Patterson, and one McCully, to the effect that Miller and Patterson had subscribed the amount of the capital stock, and had paid for it by transferring to the corporation certain oil leases stated to be of the value of $100,-000. On August 19, 1919, the capital stock was increased by $200,000, and this increase was authorized under an affidavit of Patterson, Miller, and McCully, that Miller and Patterson, the latter as trustee, together with others named in the affidavit, had subscribed the increase, and had paid for it by transferring certain other oil leases to the corporation. It was alleged that the leases transferred in payment of the original capital stock were worth not exceeding $2,000, and that those transferred in payment of the increase were of no value whatever; that the valuations stated in the respective affidavits were false and fraudulently made. The petition shows the insolvency of the corporation, its adjudication as a bankrupt, the appointment and qualification of the trustee, the administration of all assets of the corporation, and a balance of proved claims amounting to $35,000. A list of the holders of these claims is given, and it is alleged that each relied upon the capital stock being fully paid and were deceived and defrauded by the representations and affidavits of defendants in that regard. The prayer was for recovery for the amount of the unpaid claims.

The plea in abatement gave the names and residences of a large number of original stockholders of the corporation within the jurisdiction of the court. It was alleged that each of these stockholders was interested in the leases transferred to the corporation; that their stock was issued to them under the same circumstances and conditions as was the stock issued to defendants; and that if the latter were liable the other named stockholders were in like manner liable ratably with the defendants. The plea denied that there were any stock subscriptions as such, and that all the stock was issued in the manner alleged, in consideration of the leases so transferred. It was further alleged that the property was of the value stated in the affidavits; that the Secretary of State made an investigation as to its value and approved the charter; and, further, that there was no fraud in the transaction, but the leases were turned over to the corporation in good faith and at a valuation which the incorporators believed to be fair.

[1] There is no statement of the facts upon the hearing of the plea, and we must, therefore, assume as true the allegations of the plea to the effect that the named parties were also stockholders of the corporation un-

der the same conditions and circumstances as the defendants, and were liable the same as the defendants.

We have reached the conclusion that the trial court's order sustaining the plea and judgment dismissing the suit should be affirmed upon the following holdings:

[2] 1. In so far as recovery was sought to enforce liability as upon subscription to capital stock for deficiency between par value and the amount paid therefor, all stockholders who were solvent and within reach of the court's processes, were necessary parties defendant, and the order and judgment of the trial court were correct.

[3] 2. In so far as recovery was sought upon allegations of fraud, the cause of action was personal to the particular creditors defrauded, was not an asset of the corporation that passed to its trustee in bankruptcy, and was therefore not maintainable by him in that capacity.

[4] The cause of action asserted in the petition is one for recovery, to the extent necessary to satisfy creditors, of a deficiency in value paid to a corporation for its capital stock issued as fully paid and nonassessable, generally designated as "watered" stock. This term embraces a variety of transactions which may be classed as follows: (1) Where stock is issued as a bonus or otherwise without consideration; (2) where it is issued for a less sum of money than the par value; and (3) where it is issued for labor, services, or property, which at a fair valuation is less than the par value.

Under our Constitution and statutes prohibiting issuance of stock except for money, services, labor, or property equal in value to its par value, the decisions of this state place the transactions in the first two classes in substantially the same category as unpaid stock subscriptions, at least in so far as the rights of creditors are concerned. O'Bear, etc. v. Antiexplo Co., 101 Tex, 431, 108 S. W. 967, 109 S. W. 931, 16 L. R. A. (N. S.) 520, 130 Am. St. Rep. 865; Park v. Rich (Tex. Com. App.) 212 S. W. 947; Mathis v. Pridham, 1 Tex. Civ. App. 58, 20 S. W. 1015.

Where under constitutional and statutory provisions authority is given to issue stock in consideration for property, there are two lines of decision upon the liability of the stockholder.

Under the one it is held that where the transaction is fair as between the corporation and the stockholder in the valuation placed upon the property, that is, where there is no fraud in overvaluing it, the stockholder is not liable for any deficiency between the actual fair value of the property he transfers and the par value of the stock he receives.

Other courts construe these constitutional and statutory provisions to mean that the subscriber is obligated absolutely to deliver to the corporation property fairly worth the full par value of the stock he receives, and for any deficiency therein he is liable to creditors.

We find two decisions in this state upon this question and they are in apparent conflict. The Galveston Court of Civil Appeals in Cole v. Adams, 19 Tex. Civ. App. 507, 49 S. W. 1052 (Judge Pleasants writing) in speaking of the line of decisions holding stockholders "not liable to creditors, as for unpaid stock, if overvaluation was bona fide, and without intent to defraud on the part of said corporation and those receiving the stock," holds:

"While it is true this proposition is sustained by the decisions of courts of high respectability, we think the wiser and better rule is that, as to creditors without notice, property conveyed in payment of stock is not to be considered as a payment except to the extent of its money or actual value. Vide Crawford v. Rohrer, 59 Md. 599; Shickle v. Watts, 94 Mo. 410, 7 S. W. 274; Libby v. Tobey, 82 Me. 397, 19 A. 904; and Boynton v. Andrews, 63 N. Y. 93."

The Beaumont Court in the more recent case of Pedon v. Jenkins, 203 S. W. 180 (writ of error refused), followed the line of decisions holding stockholders not liable to creditors in the absence of fraud. A careful reading of the latter case may disclose that the holding was not essential to the decision. It is also to be noted that it was decided subsequently to the enactment of those provisions of Revised Statutes, arts. 1308, 1309, and 1313, which (1) require an affidavit showing the manner in which the stock subscriptions are paid, and description and value of the property where it enters into the consideration for the stock, and (2) charge the Secretary of State with the duty of ascertaining the correctness of the stated valuation and confer upon him authority to refuse the charter if the property is overvalued; whereas, the Cole decision was rendered prior to those enactments. A decision of this question is not essential to the case at bar. If the doctrine announced in the Cole Case applies, then clearly the right of action in so far as fraud is not essential is the same as if the stock had been issued for cash but less in amount than the par value. The amount of recovery against each stockholder under this doctrine, in the absence of fraud, would be the deficiency between the actual value of the property transferred and the par value of the stock.

Under this view the question of necessary parties is ruled by the decision in Mathis v. Pridham, above. The opinion in that case was written by Judge Williams, is well considered and has never been questioned on this holding so far as we have been able to find. The case there under consideration involved "watered" stock, issued either without consideration, or for an amount of money less than the par value. The decision draws no

distinction between the liability upon "watered" stock so issued and the liability for unpaid stock subscriptions. It is recognized that this liability may be severable and the individual stockholder sued alone without the joinder of other stockholders in an ordinary action at law. But where, as here, the corporation has become insolvent and its entire affairs are being wound up by a receiver or trustee, and it is necessary to resort to unpaid stock subscriptions or liability of holders of "watered" stock to satisfy its indebtedness over and above its assets, all stockholders who are solvent and within the court's jurisdiction are both proper and necessary parties. We quote from the opinion:

"In this character of suit it is essential to the completeness of the remedy that the amount of the indebtedness of the corporation, the amount of unpaid stock in the aggregate, the amount due from each stockholder, and the proportion thereof necessary to discharge the debts, should be definitely and finally ascertained. It might also become necessary to ascertain who, among the subscribers, are solvent and who insolvent, in order that the solvent ones be required, as far as their subscriptions suffice, to contribute enough to make up the deficiencies arising from insolvency of the others. It is apparent, therefore, that, in order to render certain and uniform justice to each creditor and each stockholder, they should all, as far as practicable, be brought into court. Accordingly we find the rule that equitable suits of this character must be brought by and for the benefit of all the creditors and against all delinquent subscribers to the stock of the corporation who are solvent and within the jurisdiction of the court so well established by authority that we need only to refer to some of them."

Under this holding the trial court correctly sustained the plea of nonjoinder of necessary parties defendant.

It may be conceded that in so far as the action was one of actual fraud all joint tortfeasors were severally as well as jointly liable, to the full extent of the deficiency between the actual value of the leases and the full par value of the entire capital stock issued in so far as it was necessary to satisfy unpaid creditors. The authorities, however, seem to be uniform that such cause of action based upon fraud or deceit does not pass to the trustee in bankruptcy, but is personal to such creditors as may have been defrauded. Ryerson v. Peden, 303 Ill. 171, 135 N. E. 423, 24 A. L. R. 1273; State Bank v. Kenney Bank, 143 Minn. 236, 173 N. W. 560; In re Beachy (D. C.) 170 F. 825; Courtney v. Georger (C. C. A.) 228 F. 859; S. C. (D. C.) 221 F. 502; In re Huffman, etc. (D. C.) 234 F. 798; Simons v. Thompson (C. C. A.) 289 F. 693; Collier on Bankruptcy, 13th Ed. vol. 2, pp. 1730–1733 and notes.

In those states where the liability is held to be absolute to make up the deficiency, regardless of good faith, suit by the trustee in bankruptcy is maintainable. See Babbitt v. Read (D. C.) 215 F. 395; and In re Remington, etc. (C. C. A.) 153 F. 345.

In those states, however, which require that recovery be predicated upon fraud, actual or constructive, the trustee in bankruptcy cannot maintain the action. This distinction is clearly pointed out in the several federal court decisions above cited. The difference in the two holdings is illustrated in the Missouri decisions on the one hand, and the Alabama decisions on the other, each having constitutional provisions similar to our own. Under the Missouri decisions the stockholder is liable absolutely, regardless of fraud, and the deficiency between the value of the property given and the par value of the stock received is held to be a trust fund for the benefit of creditors, the same as the liability for unpaid stock subscriptions, and passes to the trustee in bankruptcy as an asset of the corporation. In Alabama the liability is predicated upon fraud, actual or constructive, and the holding is that such liability does not pass to the trustee in bankruptcy as an asset of the bankrupt's estate.

[5] The distinction should not be lost sight of between an action founded on fraud upon the corporation itself, and one where the fraud was upon the creditors only. In the former the corporation can maintain the action, and it passes to its trustee in bankruptcy as an asset of its estate. Thus in Brooks v. Buys, 217 Mich. 263, 186 N. W. 472, where the articles recited transfer of certain property to the corporation for its stock, and the property was not in fact transferred to it, the holding was that the corporation could recover the property or its proceeds. See also Seegmiller v. Day (C. C. A.) 249 F. 177. In the latter the creditors alone may sue; and their right of recovery is dependent upon whether they were in fact defrauded.

Under the trust fund theory the liability is absolute, and each stockholder is liable ratably for the deficiency between what he paid in money or property and the par value of the stock he received. Under the holding in Mathis v. Pridham, above, all solvent stockholders within the jurisdiction of the court who are liable under this theory are necessary parties where the action, as here, is to satisfy the balance due creditors in the final winding up of the corporation's affairs. Under the fraud theory there is no right of action in the trustee in bankruptcy, but the right of action is personal to the several creditors who may show themselves defrauded. The action of the trial court in requiring that additional parties be made and upon failure thereof in dismissing the suit was proper.

The trial court's judgment is affirmed.